IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CARLITO CARTER and
ANGELITA MOSLEY,

           Plaintiffs,

v.                           CIVIL ACTION NO. 2:22-cv-00230

CPL. J. L. LUCIANO,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant's Motion for Summary Judgment* (Document 25), the *Defendant's Memorandum of Law in Support of Motion for Summary Judgment* (Document 26), the *Plaintiffs' Response to Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment* (Document 27), the *Defendant's Reply Memorandum of Law in Support of Motion for Summary Judgment* (Document 28), all attached exhibits, and the *Complaint* (Document 1). For the reasons stated herein, the Court finds the Defendant's motion should be granted.

**FACTUAL BACKGROUND**

The Plaintiffs, Carlito Carter and Angelita Mosley, initiated this action with a *Complaint* (Document 1) filed on May 19, 2022. The Defendant is Corporal J.L. Luciano of the Dunbar Police Department. The claims relate to a May 19, 2020 search of the Plaintiffs' home. The Complaint contains the following causes of action: Count I – Outrageous Conduct/Intentional

Infliction of Emotional Distress; and Count II – Violation of 42 U.S.C. § 1983, Fraudulent Affidavit. The Plaintiffs seek relief including all damages recoverable under West Virginia law, attorney's fees and costs, and pre-and post-judgment interest.

In the light most favorable to the non-movant Plaintiffs, the facts are as follows: Sometime before May 18, 2020, Lieutenant Rader of the Dunbar Police Department advised Corporal Luciano, of the same department, that the home of Lieutenant Rader's neighbor, located at 1401 Grosscup Avenue, emitted the odor of marijuana and people were coming and going from the house in the evening. The house at 1401 Grosscup Avenue was the home of the Plaintiffs, Carlito Carter and Angelita Mosley. Lieutenant Rader's purpose for making this report was out of spite and frustration with his son, who had gone to the Plaintiffs' home to smoke marijuana.[1]

In response to Lieutenant Rader's report, Corporal Luciano[2] went to the Plaintiffs' home and seized several trash bags that were sitting outside of the home's garage. After removing the trash to a separate location, Corporal Luciano found several items, including marijuana stems, marijuana seeds, pieces of a green leafy substance which yielded a positive field-test result for marijuana, and three pieces of mail addressed to Angelita Mosley of 1401 Grosscup Avenue. Corporal Luciano then checked through available police reports and located a call from Angelita Mosely made from the 1401 Grosscup Avenue address.

Armed with this information, Corporal Luciano obtained a search warrant for the Plaintiffs' address. The search warrant stated that Corporal Luciano "made complaint on oath before the

---

[1] To support this proposition, the Plaintiffs cite the deposition testimony of Angelita Mosley, not that of Lieutenant Rader. (Pl. Resp. at 2, 7–8) (Document 27.)

[2] In their briefing, the Plaintiffs state that it was Lieutenant Rader who began the trash pull at their residence, not Corporal Luciano. (Pl. Resp. at 2.) However, the Plaintiffs point to no portion of the record that it was Rader that executed the trash pull, while all available testimony and evidence indicate that Corporal Luciano executed the trash pull.

2

undersigned . . . that on the 18 day of May, 2020, and prior to the issuance of this warrant, in the said County of Kanawha, Suspect Angelita Mosely did unlawfully [violate §] 60A-4-401." (Document 25-1.)  The warrant further states that Corporal Luciano believed that "Makayla Copley" was at the Grosscup address, with illegal drugs.  (Document 25-1.)  However, no one named Makayla Copley was living at the address.  No one in the Plaintiffs' home knew of Makayla Copley, and Corporal Luciano does not know anyone by that name.[3]

On May 19, 2020, Corporal Luciano and four other officers executed the search warrant for Angelita Mosely's home.  The officers entered with their weapons drawn and placed three of the men present at the scene in handcuffs but did not place Ms. Mosely in handcuffs.  During the search, Corporal Luciano seized a fake revolver, a digital scale with pieces of a green leafy substance on it, $1,100 of U.S. currency, one bag containing 5.34 grams of marijuana, "marijuana gummies," and the cellphones of four people present in the home.

At some point during the search, Ms. Mosley was given a sheet of paper, "the affidavit for search warrant."  This document not only had the incorrect name of "Makayla Copley" but also the incorrect address of 332 ½ 16th Street, Dunbar, West Virginia.[4]  Ms. Mosely states that it was not until discovery in this case that she was provided a search warrant with her name on it. (Mosley Depo. at 43–44.)

---

[3] Corporal Luciano states that the inclusion of Makayla Copley's name was a typo, a carryover from a prior search warrant dated May 11, 2020.  (Luciano Depo. at 12:14–13:12) (Document 25-4.)  The May 11, 2020 search warrant was for 332 ½ 16th Street, Dunbar, West Virginia.  Corporal Luciano was at the search pursuant to the May 11, 2020 warrant, but no one named Makayla Copley was found at that address.

[4] The Plaintiffs have not provided this "affidavit for search warrant" to the Court.  The Defendant does attach Exhibit 1 (Document 25-1), which includes the May 18, 2020 search warrant, along with a brief narrative section.  The text of the search warrant does include Makayla Copley's name, but it also contains the correct address of 1401 Grosscup Avenue.  The Court is therefore unable to confirm if the "affidavit for search warrant" initially provided to Ms. Mosely is the May 18 search warrant, the May 11, 2020 search warrant, or some different document that incorrectly lists both Makayla Copley's name and the incorrect address.  Even assuming the document handed to Ms. Mosely had both the incorrect name and address, the resolution of the motion does not change.

## APPLICABLE STANDARD

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at

\*3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, \*3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

The Defendant argues that he is entitled to summary judgment on both of Plaintiffs' claims. The Plaintiffs argue that it was a violation of the Plaintiffs' Fourth Amendment rights for Corporal Luciano to (1) never deliver to Ms. Mosley a proper search warrant for the search of the home and (2) search the home in reliance on Lieutenant Rader's tip.[5] The Defendant argues that he is not required to provide a proper warrant, and that probable cause existed to search the Plaintiffs' home.

---

[5] Although the Plaintiffs allege in their complaint that Corporal Luciano gave a "fraudulent" affidavit, the Plaintiffs have seemingly retreated from this position. In their briefing, they have not made any argument, or pointed to any evidence, showing that Corporal Luciano's affidavit was submitted fraudulently. Rather, they argue that "Officer Luciano's mistake was the decision to search a home based off a tip by another officer of the department without first investigating why Radar (sic) made the tip" and that such conduct "shows malice of the police department and Luciano." (Pl. Memo. at 9–10.) Generally, a "mistake" will not support a legal finding of "malice" or fraudulent conduct.

42 U.S.C. § 1983 states that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"To prevail on a § 1983 claim, [a plaintiff] must show that (1) they were deprived of a federal statutory or constitutional right; and (2) the deprivation was committed under color of state law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citing *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

Regarding the Defendant's failure to deliver a proper warrant, the "Fourth Amendment does not require an officer to serve a search warrant before executing it." *U.S. v. Hurwitz*, 459 F.3d 463, 472 (4th Cir. 2006) (citing *Groh v. Ramirez*, 540 U.S. 551, 562 n.5 (2004)). "In fact, the Fourth Amendment is not offended where the executing officer fails to leave a copy of the search warrant with the property owner following the search or fails even to carry the warrant during the search." *Id.* at 472 (in text citations omitted). The purpose of the warrant requirement is to interpose "*ex ante*, the deliberate, impartial judgment of a judicial officer" and afford "*ex post*, a right to suppress evidence improperly obtained." *Id.* (citing *U.S. v. Grubbs*, 547 U.S. 90, 98 (2006)). Its purpose "does not protect an interest in monitoring searches or engaging the police in a debate about the warrant." *Id.* (citing *Grubbs*, 547 U.S. at 98).

Without a right to be presented with a search warrant, it cannot be said that the Plaintiffs have a right to a warrant free of errors. Therefore, the Defendant's failure to deliver the correct warrant or a warrant free of errors does not rise to a violation of the Plaintiffs' Fourth Amendment rights.

The Plaintiffs also argue that their Fourth Amendment rights were violated because Corporal Luciano searched their home "based off a tip by another officer of the department without first investigating why Radar (sic) made the tip." (Pl. Memo. at 9–10.) The Fourth Amendment shields the people from unreasonable searches and seizures. A home search ordinarily requires a warrant. *Fernandez v. California*, 571 U.S. 292, 298, (2014). A warrant is to be supported by probable cause, which requires that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

It is true that a "tip is rarely adequate on its own to support a finding of probable cause" and to establish probable cause it is often essential that an officer corroborate the tip. *United States v. Miller*, 925 F.2d 695, 698 (4th Cir. 1991); *see also United States v. McCraw*, 920 F.2d 224, 227 (4th Cir. 1990) ("A combination of tips from an informant and first-hand corroborative observation of suspicious activity will provide probable cause.") A tip usually supports a finding of probable cause when the police have either "(1) successfully used that [informant] on previous occasions, and/or (2) have received or observed sufficient information to corroborate the [informant's] statements before obtaining a search warrant." *U.S. v. Carter*, 2:18-CR-00257-DCN, 2018 WL 6831124, at *7 (D.S.C. Dec. 28, 2018) (reviewing five cases from the Fourth Circuit). Obviously, an informant's motivations to make the tip also impact the reliability of the tip.

However, the Fourth Amendment "does not require investigators to exhaust every potential avenue of investigation before seeking and obtaining a warrant." *U.S. v. McNeal*, 818 F.3d 141, 151 (4th Cir. 2016). Rather, the inquiry is simply whether "each warrant was supported by probable cause." *McNeal*, 818 F.3d at 151; *see also Edens v. Kennedy*, 112 Fed. Appx. 870, 874

(4th Cir. 2004) (unpublished) ("the fact that [the investigating officer] could have followed up on the tip in some other manner does not render the entry unconstitutional"). Accordingly, here, the question is not whether Corporal Luciano should have probed into Lieutenant Rader's motivations, but whether the search warrant was supported by probable cause.[6]

Probable cause exists when "there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of crime and will be present at the time and place of the search." *United States v. Suarez*, 906 F.2d 977, 984 (4th Cir. 1990). The determination of probable cause is "a practical, common-sense decision." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When reviewing a magistrate judge's issuance of a challenged warrant, a court "may not go beyond the information actually presented to the magistrate during the warrant application process" and must ask "whether the magistrate judge had a substantial basis for finding probable cause." *U.S. v. Lyles*, 910 F.3d 787, 791 (4th Cir. 2018) (citing *Gates*, 462 U.S. at 238–39; *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 277 (4th Cir. 2004)).

Here, the magistrate had a substantial basis for finding probable cause and to issue the warrant. The narrative attached to the warrant outlined the basic facts of Corporal Luciano's investigation:

(1) Lieutenant Rader told Corporal Luciano that he could smell the odor of marijuana coming from the home at 1401 Grosscup Avenue and also witnessed vehicle traffic in the evening.

---

[6] In so holding, the Court also refuses to accept any implied argument within the Plaintiffs' position that a tip from a fellow police officer should be viewed with a particular level of suspicion.

(2) Corporal Luciano conducted a trash pull[7] from garbage collected outside the Plaintiffs' home, wherein he found seven marijuana stems, five marijuana seeds, pieces of marijuana leaves in red cups, and mail belonging to Angelita Mosley.

(3) The field test returned a positive result that the leafy material was marijuana.

(4) Available reports showed that Angelita Mosley had made a call from that address.

The Fourth Circuit has expressed doubt "that a scintilla of marijuana residue or hint of marijuana use in a trash can should support a sweeping search of a residence." *Lyles*, 910 F.3d at 792 (4th Cir. 2018). For example, a single-instance trash pull that produced three empty packs of rolling papers, a piece of mail addressed to a home, and three marijuana stems, without more, is not enough to support a finding of probable cause. *Id.* at 793. Compare that with *United States v. Gary*, where a single-instance trash pull, in response to an anonymous tip that drug related activity was taking place, which produced plastic bags with heroin residue and bags with cut corners indicating the distribution of narcotics, was sufficient to support a finding of probable cause. 528 F.3d 324, 328-29 (4th Cir. 2008).

Even though the evidence from the trash pull conducted by Corporal Luciano leans toward a "hint of marijuana use," and a tip alone often cannot support probable cause, when combined, the trash pull and the tip corroborate one another. The evidence from the trash pull pointed to relatively recent marijuana use at 1401 Grosscup Avenue, which is bolstered by the tip's content that the odor of marijuana had recently been emanating from that same residence. Both the evidence from the trash pull and the content of the tip were available to the magistrate at the time Corporal Luciano applied for the warrant. Together, along with the evidence that Angelita

---

[7] The Plaintiffs do not argue that the trash pull violated their Fourth Amendment rights.

9

Mosley resided at the address, the tip and trash pull offer a substantial basis for a finding of probable cause, and the issuance of the warrant. Therefore, the search of the Plaintiffs' home did not violate the Fourth Amendment. Thus, the Plaintiffs' claims under 42 U.S.C. § 1983 cannot survive summary judgment.

The Plaintiffs also argue that the Defendant's conduct constitutes the intentional infliction of emotional distress. In West Virginia, to establish a claim for intentional infliction of emotional distress, a plaintiff must show:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency;
>
> (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct;
>
> (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and,
>
> (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Laboratories, Inc.*, 202 W.Va. 369, 504 S.E.2d 419 (1998). It is the role of the trial court to determine "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress" but it is the jury's determination as to "whether conduct is in fact outrageous." Syl. Pt. 4, *Id.*

Thus, it is the Court's task to determine whether Corporal Luciano's conduct "may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress." *Id.* To constitute extreme and outrageous conduct, "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

10

of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 705 (W. Va. 1982). "[C]onduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct." *Courtney v. Courtney*, 186 W.Va. 597, 413 S.E.2d 418, 423 (1991). Rather, the conduct must be so, that when the facts are recited "to an average member of the community [it] would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Tanner v. Rite Aid of West Virginia, Inc.*, 194 W.Va. 643, 461 S.E.2d 149 (1995) (citing Rest. 2d. of Torts § 46).

The Plaintiffs argue that "[o]btaining a search warrant from an officer for a personal vendetta against the plaintiffs," and failing to provide that search warrant to the Plaintiffs while providing an affidavit with the wrong name and address to Plaintiff Mosely is extreme and outrageous. (Pl. Memo. at 8.) The Defendant argues that Corporal Luciano's conduct was not even improper, and certainly not extreme and outrageous.

"[M]inor abuse of [] law enforcement authority" that rises to only "threats or petty oppressions" does not constitute "extreme and outrageous conduct." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 778 (S.D.W. Va. 2015) (Copenhaver, J.). A review of cases applying West Virginia's standard, reveals that it is difficult to establish that even distasteful police conduct rises to the level of extreme and outrageous conduct. *Pegg v. Herrnberger*, 845 F.3d 112, 122 (4th Cir. 2017) (a lawful arrest free of excessive force is only "merely annoying" and therefore does not constitute excessive force); *Sammons v. Sowards*, CV 3:21-0081, 2022 WL 828952, at *9 (S.D.W. Va. Mar. 18, 2022) (Chambers, J.) (mistaken, but lawful, investigation of a crime does not constitute outrageous conduct); *Woods v. Town of Danville*, W.V., 712 F. Supp. 2d 502, 511 (S.D.W. Va.

11

2010) (Goodwin, C.J.) (the arrest of the incorrect suspect, which resulted in the handcuffing and lifting of the plaintiff did not qualify as outrageous); *Bellotte v. Edwards*, 3:08-CV-94, 2011 WL 13186263, at *5 (N.D.W. Va. Mar. 30, 2011) (failure to comply with a knock-and-announce rule does not render a police entry extreme and outrageous); *Lowe v. Spears*, CIV.A. 3:06-0647, 2009 WL 1393860, at *6 (S.D.W. Va. May 15, 2009) (Chambers, J.) (grabbing and holding a suspect's arm to effectuate an arrest for a minor offense, possibly fueled by the officer's frustration, does not qualify as outrageous).

The Plaintiffs argue that the Defendant's search of their home in furtherance of Lieutenant Rader's "personal vendetta" is extreme and outrageous.[8] But, as discussed above, the Defendant's search of the Plaintiffs' home was lawful and supported by probable cause. Even if the search was, as the Plaintiffs speculate, furthering a spite-filled mission of Lieutenant Rader, Corporal Luciano was able to legally obtain a search warrant for the Plaintiffs' home. Like an arrest, a lawful search of a home, otherwise free of excessive force or unprovoked harassment during the search, is not conduct that is "beyond all possible bounds of decency." *Pegg*, 845 F.3d at 122.

Similarly, it was not extreme or outrageous for a police officer to provide an incorrect warrant to a suspect. Providing Plaintiff Mosely with an incorrect warrant is, at best, something that is annoying or confusing. But annoying and confusing conduct is not "utterly intolerable,"

---

[8] The evidence that Corporal Luciano knew about Lieutenant Rader's "vendetta" is slim. Corporal Luciano's testimony is that he "don't know anything about no son" of Lieutenant Rader. (Luciano Depo. at 24:2–6.) Without knowledge of Lieutenant Rader's son, it is unreasonable to assume that Corporal Luciano was acting in furtherance of the feud. The only evidence cited to support Corporal Luciano's knowledge of the supposed Rader feud is testimony from Ms. Mosley. (Mosley Depo. at 43–44.) But it has not been disclosed or argued exactly how Ms. Mosley knows that Corporal Luciano was "in" on the feud. Rather, it seems to be an instance "of building of one inference upon another." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

nor would it make an average member of the community exclaim "Outrageous!" Therefore, a jury could not reasonably find that the Defendant's presentation of a warrant with an incorrect name and address constitutes extreme and outrageous conduct.

The Plaintiffs simply have not produced evidence of conduct that, as a matter of law, could be the basis of a claim for the intentional infliction of emotional distress. The Defendant has met his burden of establishing that he is entitled to summary judgment on this claim. In sum, the Plaintiffs have failed to produce evidence that would establish a genuine issue of material fact as to either of the claims alleged in their complaint.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Motion for Summary Judgment* (Document 25) be **GRANTED** and that this matter be **DISMISSED**.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER: June 12, 2023

*[signature]*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

13